**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BLUSHARK DIGITAL, LLC, | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| SENTINEL INSURANCE COMPANY, LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Blushark Digital, LLC ("Blushark" or "Plaintiff"), on behalf of itself and all others similarly situated, states as follows for its Complaint against Defendant, Sentinel Insurance Company, Ltd. ("Sentinel" or "Defendant"):

## INTRODUCTION

1.      This is a class action brought by Plaintiff Blushark against Defendant Sentinel, related to insurance policies that insure Plaintiff's properties, business operations, and potential liability in connection with Plaintiff's business operations. These insurance policies include Business Income coverage, Extra Expense coverage, coverage for loss due to the actions of a Civil Authority, and Business Income from Dependent Properties, and contains no relevant virus exclusion.

2.      Plaintiff is a small business that purchased Defendant's insurance policy and made premium payments for a policy that, in the event of a catastrophe requiring a shutdown of business operations, would require Defendant to honor its contractual obligation to provide coverage. In March 2020, such a catastrophe took place when Plaintiff was forced to close its digital marketing

1

businesses due to the COVID-19 pandemic. All across the country, including in Washington, DC, Maryland, and Connecticut, government authorities issued closure orders to businesses, including the businesses operated by Blushark, in an effort to stop the rapid spread of the deadly COVID-19 virus. Orders from Civil Authorities requiring businesses to close have resulted in massive losses to businesses throughout the country. As a result, many insureds, including Plaintiff, filed claims for Business Income coverage, Extra Expense coverage, coverage for losses due to the actions of a Civil Authority, and Business Income from Dependent Properties coverage.

3.      In response to the business interruption claims filed by Plaintiff and thousands of other class members resulting from the COVID-19 pandemic, Defendant has systematically denied and continues to deny and refuse to provide payment for insurance claims for coverage for similar losses and expenses by insureds holding policies that are, in all material respects, identical. Defendant's decision to not provide coverage and/or its decision to refuse to pay claims under the common policy forms issued to Plaintiff and the putative class members constitutes a breach of contract and provides it with the right to seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the class members establishing that it is entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the business losses it has sustained.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Blushark is a limited liability company organized under Maryland law with its principal place of business located at 1826 Jefferson Place NW, Washington DC, 20036-2557. Blushark operates a digital marketing company. All members of Blushark are citizens of states other than Connecticut.

2

5.      Defendant Sentinel Insurance Company, Ltd. is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Defendant Sentinel is a wholly-owned subsidiary of the Hartford Financial Services Group.

6.      At all times material, Defendant engaged in substantial and not isolated activity on a continuous and systematic basis in the states of Connecticut, Maryland, and Washington DC, by issuing and selling insurance policies in Connecticut, Maryland, Washington DC and other states across the country, and by contracting to insure property located there.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds $75,000.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because there is diversity between Defendant and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this district, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claim occurred in this district.

10.      This Court has both general and specific jurisdiction over Defendant because Plaintiff's claims arise out of, among other things, Defendant conducting, engaging in, and/or carrying on business in Connecticut, where the Defendant has its principal place of business.

## FACTUAL BACKGROUND

**A.  *Insurance Coverage***

11.    On or about October 30, 2019, Blushark renewed the Policy, a property insurance policy issued and underwritten by Defendant. The insured premises under the policy is 1826 Jefferson Place NW in Washington DC. A copy of the Blushark Policy is attached as Exhibit A.

12.    The Policy uses standard common forms that contain the same and/or substantially similar provisions at issue in this action as those issued by Defendant to the members of the putative class as defined herein.

13.    The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

14.    In accordance with the all-risk nature of the Policy, Defendant agreed to pay for all losses caused by a "Covered Cause of Loss," defined as "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is excluded or limited in the Policy.

15.    One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Business Income."

16.    Pursuant to this coverage, Defendant promised to pay for "Loss of Business Income" caused by a Covered Cause of Loss. Specifically, Defendant promised to pay for the "actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'"

17.    The Policy defines "Business Income" as "(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and (b) Continuing normal operating expenses incurred, including payroll."

4

18.    "Suspension" means, among other things, "(a) The partial slowdown or complete cessation of your business activities."

19.    "Period of Restoration" means:

… the period of time that:

a.    Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "scheduled premises", and

b.    Ends on the date when:

(1) The property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

(2) The date when your business is resumed at a new, permanent location.

20.    Additionally, under the Policy, Defendant also promised to cover "Extended Business Income." This coverage requires Defendant to pay for loss of business income beyond the Period of Restoration under certain conditions.

21.    Specifically, Defendant promised to pay for the actual loss of Business Income during the period that begins on the date that the insured property is repaired, and ends either 30 days thereafter or on the date when operations are restored to the level which would generate business income at normal levels, whichever is earlier.

22.    The Policy also provides a coverage for extra expenses in a section titled "Extra Expense." Pursuant to this section of the Policy, Defendant promised to pay for "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises.'"

23.    Defendant also promised to cover "Business Income from Dependent Properties" under the Policy. Subject to limits of insurance, this coverage requires Defendant to "pay for the actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property."

5

24.     The Policy also provides "Civil Authority" coverage for "the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'." This coverage begins "72 hours after the order of a civil authority and coverage will end at the earlier of: (a) When access is permitted to your 'scheduled premises'; or (b) 30 consecutive days after the order of the civil authority."

25.     The Civil Authority coverage is an independent basis for business interruption coverage that can be triggered even when the standard business interruption coverage is not.

26.     Plaintiff's Policy does not contain any exclusion that would apply to allow Defendant to deny coverage for losses caused by the interruption of Plaintiff's business and the actions of civil authorities.

27.     The Policy does not contain any exclusion which would apply to allow Defendant to completely deny coverage for losses caused by COVID-19 and related actions of civil authorities taken in response to COVID-19.

28.     Because the Policy is an all-risk policy and does not exclude Plaintiff's losses, Plaintiff's losses are covered up to the applicable limits of insurance.

**B.  *The COVID-19 Pandemic***

29.     COVID-19 is a novel coronavirus that originated in Wuhan, China at the end of 2019 and rapidly spread around the world, infecting millions of people, including over 2.15 million Americans. Over 200,000 Americans have died due to COVID-19.

30.     COVID-19 is a physical substance that can cause lethal illness. COVID-19 can be present outside the body in viral fluid particles. COVID-19 is highly contagious and easily communicable through droplets in the air and on surfaces.

6

31.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. Contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces within the Insured Property.

32.     COVID-19 remains capable of being transmitted on a variety of inert physical surfaces for various periods of time. For example, reports issued by the National Institute of Health ("NIH") indicate that COVID-19 remains stable and transmittable in airborne aerosols for up to three hours, on copper for up to four hours, on cardboard for up to 24 hours, and on plastic and stainless steel for up to two to three days. Moreover, the COVID-19 pandemic has been exacerbated by the fact that the virus physically infects and stays on surfaces of some objects or materials for up to 28 days.

33.     The Center for Disease Control ("CDC") has issued guidance recommending people not to gather in groups larger than 10. Pursuant to CDC guidelines, people face increased danger of contracting COVID-19 in places where people congregate and are in close proximity to one another, and especially in indoor environments.

34.     COVID-19 has been transmitted in a variety of ways, including transmission (a) by way of human contact with surfaces and items of physical property; (b) by human to human contact and interaction, including places like bars and restaurants, retail stores, and hair and beauty salons, and the like; and (c) through airborne particles emitted into the air and even recirculated through air conditioning units.

35.     The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property.

36.     The presence of COVID-19 particles and/or the presence of persons infected with COVID-19 or carrying COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function, and resulting in direct physical loss to and of the premises and property.

**C.  *The Covered Cause of Loss***

37.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

38.     Without a vaccine to protect against COVID-19, effective control of the outbreak relies on measures designed to reduce human-to-human and surface-to-human exposure. Information on the CDC's website provides that COVID-19 spreads when people are within six feet of each other or when a person comes in contact with a surface or object that has the virus on it. Various other sources state that close contact with a person with the virus or surfaces where the virus is found can transmit the virus.

39.     The secondary exposure of humans to contaminated surfaces is particularly acute in places where the public gathers to socialize, eat, drink, shop, find entertainment, and recreate. This is why the CDC recommends that in viral outbreaks individuals who are infected stay at home and those who are not sick engage in preventive measures such as constant hand washing and avoiding activities that would bring them into the close proximity of people with the virus or surfaces where the virus may reside. However, because these recommendations have proven ineffective to minimize the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing non-essential business establishments, including restaurants, bars, hotels, theaters, personal care salons, gyms, and schools, and mandating social distancing among the

population. This has caused the cancelation of sporting events, parades, and concerts, the closure

of amusement parks, and substantial travel restrictions. In addition, to conserve medical supplies,

orders have been issued prohibiting the performance of non-urgent or non-emergency elective

procedures and surgeries, forcing the suspension of operations at many medical, surgical,

therapeutic, and dental practices.

      40.    As of the date this Complaint is filed, Washington, DC had over 16,000 total

positive cases of COVID-19 and over 640 deaths.

      41.    In response to the public health emergency caused by the COVID-19 pandemic,

civil authorities across the United States, including the civil authorities with jurisdiction over

Plaintiff in Washington, DC, have issued Closure Orders restricting and prohibiting access to

Plaintiff's insured property and the insured properties of other putative class members.

      42.    On March 11, 2020, Washington DC Mayor Bowser declared a public emergency

and public health emergency. On March 20, 2020, the Mayor extended those declarations through

April 24, 2020. Additional orders signed by the Mayor on March 16, 2020 and March 20, 2020,

as well as several directives from the Department of Health, provided for additional steps required

to protect public health.

      43.    On March 24, 2020, Mayor Bowser issued an order re "Closure of Non-Essential

Businesses and Prohibition on Large Gatherings During Public Health Emergency for the 2019

Novel Coronavirus (COVID-19)." The Order required the temporary closure of the on-site

operations of all non-essential businesses, including Plaintiff's business, and a cessation of all

business activities at all businesses with facilities in Washington, DC, except for essential

businesses. This order continued in effect through April 24, 2020.

44.     On April 15, 2020, Mayor Bowser issued an order extending the state of emergency and public health emergency for Washington, DC, and required non-essential businesses such as Plaintiff's to continue to remain closed through May 15, 2020.

45.     On May 13, 2020, Mayor Browser issued an order extending the state of emergency and public health emergency for Washington, DC, and required non-essential businesses such as Plaintiff's to continue to remain closed through June 8, 2020.

46.     On May 27, 2020, Mayor Bowser issued an order re Phase One Reopening of Washington DC. Phase One, which went into effect on May 29, 2020, required nonessential businesses such as Plaintiff to remain closed except for "minimum business operations."

47.     On June 19, 2020, Mayor Bowser announced that Phase Two Reopening of Washington, DC would begin on June 22, 2020. In this phase, Plaintiff's business is finally permitted to resume, but teleworking is still strongly encouraged. Restrictions still affect how Plaintiff operates its business in Phase Two.

48.     State and federal courts across the country have already agreed with Plaintiff's position that physical loss and damage exists resulting in coverage here. Furthermore, Closure Orders issued in states such as New York, Colorado, Washington, Indiana, New Mexico, North Carolina, Missouri, and Illinois have all recognized that COVID-19 poses a specific threat to property and can cause property loss and damage.

49.     The Closure Orders issued by Washington, DC authorities covering Washington, DC non-essential businesses (such as Plaintiff's) are similar to Closure Orders that have been issued nationwide by state and local civil authorities. Specifically, all but five states enacted COVID-19 Civil Authority Orders, including but not limited to "stay-at-home" or "shelter-in-place" orders; 35 states closed all non-essential businesses, with other states enacting measures to

curtail business operations; all 50 states closed schools; and all but one state closed restaurants and bars for services other than take-out and delivery.

50.    The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access to the property, preventing customers and patients from physically occupying the property, causing the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises. Plaintiff also suffered a "direct physical loss of and damage to" its property in the form of diminished value, lost income, and forced physical alterations during the period of restoration.

51.    The Closure Orders of civil authorities prohibited access to Plaintiff and other class members' Insured Properties, and the areas immediately surrounding the Insured Properties, in response to dangerous physical conditions resulting from a covered cause of loss.

52.    As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and other class members sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses. Plaintiff has also sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties.

53.    Plaintiff's losses and expenses have continued through the date of filing this action.

54.    Plaintiff's losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

55.    Consistent with the terms and procedures of the Policy, Plaintiff submitted a claim for loss to Defendant under the Policy due to the presence of COVID-19 and the shutdown Civil Authority orders.

56.    In violation of the Policy's plain language and its own contractual obligations, Defendant denied Plaintiff's claim and refuse to pay for Plaintiff's losses and expenses.

D. **The COVID-19 Pandemic Has Affected Policyholders Nationwide**

57.    COVID-19 is physically impacting private commercial property throughout the United States and the State of Connecticut, threatening the survival of thousands of restaurants, personal care services businesses, retail establishments, and other businesses that have had their business operations suspended or curtailed indefinitely by order of civil authorities.

58.    Sentinel does not intend to cover losses caused by the COVID-19 pandemic as part of business interruption coverage. As aforementioned, Sentinel denied Plaintiffs' claims. Upon information and belief, Sentinel has denied similar claims by other Class members across-the-board, a practice which is belied by not only the express terms of the insurance policies, but also: (a) the Small Business Administration's requirement that "reimbursement" from "business interruption insurance" be submitted along with an application for an Economic Injury Disaster Loan ("EIDL") loan; and (b) American's SBDC, which represents America's nationwide network of Small Business Development Centers (SBDCs), whose COVID-19 newsletter expressly states, "Business interruption insurance also applies if government actions cause operations to cease temporarily, which results in a loss for a firm."

59.    As a result, many small businesses that maintain commercial multiperil insurance policies with business interruption coverage will have significant uninsured losses absent declaratory relief from this Court. Indeed, even if state and local governments re-open, as some have, small businesses will almost certainly still be under social-distancing mandates and will continue to experience diminishing revenues due to the loss of covered property. These businesses, like Plaintiff's, also remain susceptible to additional governmental decrees suspending or

curtailing operations. A declaratory judgment determining that the coverages provided in Sentinel's standard commercial property insurance policies applies to the suspension, curtailment, and interruption of business operations resulting from measures put into place by civil authorities is necessary to prevent Plaintiff and similarly situated Class members from being denied critical coverage for which they have paid premiums.

## CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

61.    Plaintiff seeks to represent nationwide classes defined as:

a.    All persons and entities with Business Income coverage under a property insurance policy issued by Defendant that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

b.    All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendant that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

c.    All persons and entities with Extra Expense coverage under a property insurance policy issued by Defendant that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their property insurance policy (the "Extra Expense Declaratory Judgment Class").

     d.   All persons and entities with Business Income from Dependent Properties coverage under a property insurance policy issued by Defendant that suffered an actual loss of Business Income caused by direct physical loss or physical damage at a dependent property or properties ("the Business Income from Dependent Properties Declaratory Judgment Class").

62.    Excluded from each defined Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

63.    This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

64.    **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

65.    **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class Members, including, without limitation:

14

a. Defendant issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class Members;

b. whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c. whether Defendant wrongfully denied all claims based on COVID-19;

d. whether Defendant's Business Income coverage applies to a suspension of business caused by COVID-19;

e. whether Defendant's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f. whether Defendant's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g. whether Defendant's Business Income from Dependent Properties coverage applies to a loss of income caused by loss or damage to dependent properties;

h. whether Defendant has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i. whether Plaintiff and the class are entitled to an award of reasonable attorney fees, interest and costs.

66.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because Plaintiff and the other Class Members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties coverages. Plaintiff's claims are based

15

upon the same legal theories as those of the other Class Members. Plaintiff and the other Class Members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.

67.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class Members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

68.    **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, and Extra Expense coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class Members, who are not parties to this action, to protect their interests.

69.    **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members.

70.  **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

71.  Plaintiff repeats and realleges Paragraphs 1-70 as if fully set forth herein.

72.  Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

73.  Plaintiff's policy with Defendant, as well as those of the other Business Income Declaratory Judgment Class Members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class Members' losses for claims covered by the policy.

74.  Plaintiff and the other Business Income Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class Members are entitled.

75.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

76.     An actual case or controversy exists regarding Plaintiff and the other Business Income Declaratory Judgment Class Members' rights and Defendant's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class Members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

77.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiff and the other Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.  Defendant is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT II**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

78.     Plaintiff repeats and realleges Paragraphs 1-70 as if fully set forth herein.

18

79.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

80.     Plaintiff's insurance policy with Defendant, as well as those of the other Civil Authority Declaratory Judgment Class Members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members' losses for claims covered by the policy.

81.     Plaintiff and the other Civil Authority Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

82.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

83.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class Members' rights and Defendant's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class Members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

84.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a. Plaintiff and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b. Defendant is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

### COUNT III
### DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

85. Plaintiff repeats and realleges Paragraphs 1-70 as if fully set forth herein.

86. Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

87. Plaintiff's insurance policy with Defendant, as well as those of the other Extra Expense Declaratory Judgment Class Members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members' losses for claims covered by the policy.

88. Plaintiff and the other Extra Expense Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has

wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

89.    Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

90.    An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class Members' rights and Defendant's obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

91.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.    Plaintiff and the other Extra Expense Declaratory Judgment Class Members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.    Defendant is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT IV**
**DECLARATORY JUDGMENT – BUSINESS INCOME FROM DEPENDENT PROPERTIES COVERAGE**
**(Claim Brought on Behalf of the Business Income from Dependent Properties Declaratory Judgment Class)**

92.     Plaintiff repeats and realleges Paragraphs 1-70 as if fully set forth herein.

93.     Plaintiff brings this Count both individually and on behalf of the other members of the Business Income from Dependent Properties Declaratory Judgment Class.

94.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

95.     Plaintiff's Policy, as well as the policies of other Business Income from Dependent Properties Declaratory Judgment Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Business Income from Dependent Properties Declaratory Judgment Class members' losses for claims covered by the Policy.

96.     In the Policy, Defendant promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendant promised to pay for losses of business income sustained due to direct physical loss or physical damage at the premises of a dependent property.

97.     Plaintiff and Business Income from Dependent Properties Declaratory Judgment Class members suffered losses of business income due to direct physical loss and/or physical damage at the premises of dependent properties.

98.     These losses triggered business income from dependent properties coverage under the Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies.

99. Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

100. Defendant, without justification, disputes that the Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for these losses.

101. Plaintiff seeks a Declaratory Judgment that its Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

102. An actual case or controversy exists regarding Plaintiff's and other Business Income from Dependent Properties Declaratory Judgment Class members' rights and Defendant's obligations to reimburse Plaintiff and other Business Income from Dependent Properties Declaratory Judgment Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

103. Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

   a. The Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for Class members' losses of business income from dependent properties.

   b. Defendant is obligated to pay Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class Members the full amount of the contingent income losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a.  Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.  Entering declaratory judgments on Counts I–IV in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, Extra Expense Declaratory Judgment Class, and the Business Income from Dependent Properties Declaratory Judgment Class, as follows:

   i.   Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

   ii.  Defendant is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

c.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

d.  Ordering Defendant to pay attorneys' fees and costs of suit; and

e.  Ordering such other and further relief as may be just and proper.

24

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: October 22, 2020

Respectfully submitted,

 /s/ *Kenneth Rosenthal*
Kenneth Rosenthal (ct05944)
Law Office of Kenneth Rosenthal
One Audubon Street, 3d Floor
New Haven, CT 06511
P (203) 915-4235
F (203) 306-3286
krosenthal@gs-lawfirm.com

(*All to be admitted Pro Hac Vice*):

Dominic J. Aprile
daprile@bathweg.com
Connecticut Juris No. 414087
New Jersey Bar No. 024351983
**BATHGATE, WEGENER & WOLF, P.C.**
One Airport Road, P.O. Box 2043
Lakewood, New Jersey 08701
P (732) 363-0666
F (732) 363 9864

Adam M. Moskowitz
adam@moskowitz-law.com
Florida Bar No. 984280
Adam A. Schwartzbaum
adams@moskowitz-law.com
Florida Bar No. 93014
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
P (305) 740-1423

William F. "Chip" Merlin, Jr.
cmerlin@MerlinLawGroup.com
New Jersey Bar No.  055182013
Florida Bar No.  364721
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
P (813) 229-1000
F (813) 229-3692